IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LEAH K. MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-12-D-BR |
| | § | |
| ANIMAL HEALTH | § | |
| INTERNATIONAL, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Animal Health International, Inc.'s ("AHI") Motion for Summary Judgment (ECF 31). The undersigned recommends the motion be GRANTED.

## I. CASE OVERVIEW

This is an employment discrimination and retaliation suit brought by Plaintiff Leah Moore ("Moore"). Moore's Amended Complaint claims she was discriminated against based on disability in violation of the Americans with Disabilities Act ("ADA"). (ECF 23). Moore pleaded various other claims, but the Court analyzes only Moore's discrimination claim under the ADA for the reasons stated below.

## II. FACTUAL BACKGROUND[1]

Moore worked in AHI's Turnkey division. (AHI App., 40; Moore App., 20). Turnkey provides financial and operational software and related services for the cattle feeding industry and

---

[1] ECF 33-1 – 33-7 is AHI's appendix in support of its motion for summary judgment and will be cited as "AHI App." Citations will refer to the numbering assigned by AHI. ECF 39-1 – 39-13 and 50-1 – 50-7 form Moore's appendix in support of her response to the motion for summary judgment and will be cited as "Moore App." Citations will refer to the numbering assigned by Moore.

1

has five operating business groups: Turnkey Financial, FY 3000, ALT, AMS, and PICS. (AHI App., 39). Moore worked in Turnkey's AMS group and provided technical support for two software programs—Feed Yard Management ("FYM") and Small Feeder Program ("SFP"). (AHI App., 40; Moore App., 13). She assisted in the development of help manuals for the FYM and SFP software and helped customers with computer and software issues. (AHI App., 7, 40; Moore App., 10, 15–16). Although she occasionally helped set up computers in customers' feed yards, she did not work in the field full time. (AHI App., 10; Moore App., 15–16). Brad Richards ("Richards") was an AHI field support manager and Moore's direct supervisor. (AHI App., 55; Moore App., 16). Richards' supervisor was Steve Renz ("Renz"), Turnkey's general manager. (AHI App., 15). The AMS group included field support technicians, and the group had between 15 and 18 employees in 2015. (*Id*. at 41–42).

Moore was the only client technology specialist in the Turnkey division. (*Id*. at 12). Unlike Moore, field support technicians interacted with clients in the field while Moore, a client technology specialist, interacted mainly with clients over the phone. (AHI App., 9–10; Moore App., 47). In July 2015, most of the field support technicians were located in areas outside of Amarillo, Texas, whereas Moore began working from AHI's Amarillo office in August 2013. (AHI App., 13.1, 62). The field support technicians were paid hourly, and Moore was the only salaried employee in the group. (*Id*. at 43).

A few years before Moore was terminated, AHI made the decision to focus on the AMS program. (*Id*. at 10). The FYM and SFP programs Moore supported were no longer being installed and were becoming outdated. (*Id*. at 10–11, 57.3). In September 2014, AHI presented Moore a modified business plan to familiarize her with the new AMS program, so she could provide support for AMS. (AHI App., 16–17; Moore App., 49). At the time, Moore's supervisors were considering

setting up an AMS program help desk and anticipated that Moore would manage the help desk. (AHI App., 47–48; Moore App., 49). Renz believed Moore was capable of managing the AMS help desk, and Richards hoped Moore would be capable of doing so. (AHI App., 48; Moore App., 50).

The AMS program help desk was never implemented. (AHI App., 48). AHI determined field support technicians could support AMS customers better than a help desk because customers called field support technicians directly, rendering the help desk redundant. (*Id*.). Moore was the only employee supporting the FYM and SFP software at the time, and by early 2015 AHI believed that support for the FYM and SFP software did not warrant a full-time position. (*Id*. at 14, 45). Field support technicians began installing the AMS program in February 2015. (*Id*. at 19).

Moore had emergency surgery during March 2015. (AHI App., 19; Moore App., 26). On June 22, 2015 Moore's job-protected FMLA leave ended, and she asked for and was given additional extended medical leave due to a partial colostomy and depression. (AHI App., 20–21). Moore was cleared to return to work full time beginning September 8, 2015. (Moore App., 30). AHI received Moore's return to work notice on August 24, 2015. (AHI App., 46.2). In an email exchange spanning August 24 and 25, 2015, Richards and Renz discussed whether Moore's position was open. (AHI App., 70–72; Moore App., 90–92). Renz wrote that other Turnkey employees were performing Moore's work. (*Id*.). Richards expressed the continued need for a help desk, but stated it would require "restructuring" and someone who could take calls from customers and other field support technicians. (AHI App., 71; Moore App., 91). Renz terminated Moore on September 1, 2015. (AHI App., 40; Moore App., 82). On December 13, 2017, Moore filed suit in Potter County. (ECF 1-3 at 6). AHI then removed the case to this court. (ECF 1).

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual issues that are material under the applicable substantive law. *See id.*; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190,

1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194. The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation omitted)). The movant then "must demonstrate the absence of a genuine issue of material fact," but does not have "to negate the elements of the nonmovant's case." *Id*. (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

"If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little*, 37 F.3d at 1075). On the other hand, if the movant meets its burden to show an absence of evidence supporting the nonmovant's case, then the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *Little*, 37 F. 3d at 1075 (citing *Celotex*, 477 U.S. at 324). If the nonmovant cannot provide some evidence to support its claim,

summary judgment is appropriate. Fed. R. Civ. P. 56(e); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

## IV. ANALYSIS

Most of AHI's grounds for summary judgment are moot because Moore has narrowed her claims against AHI to those arising under the ADA. (ECF 49 at 5). Thus, the Court's summary judgment analysis is limited to Moore's claim of discriminatory termination under the ADA.[2]

### A. Exhaustion of administrative remedies

AHI's motion seeks dismissal of many of Moore's claims based on the affirmative defense of failure to exhaust administrative remedies and argues the challenged claims are not within the scope of Moore's charge of discrimination. (ECF 32 at 17–1). AHI submitted Moore's Form 5 charge of discrimination in support. (AHI App., 68). Though not mentioned by either party, the Court noted that Moore's Form 5 charge of discrimination is stamped as "received" by the Equal Employment Opportunity Commission ("EEOC") on December 28, 2016, 484 days after Moore was terminated. (*Id*.). The Court raised *sua sponte* whether AHI is entitled to summary judgment dismissing some or all of Moore's claims based on failure to exhaust administrative remedies, specifically the timeliness of the charge's filing, and directed Moore

---

[2] Moore also pleaded a claim for retaliation under the ADA (ECF 23 at 11), and AHI seeks summary judgment on this claim on two grounds. First, AHI points to an absence of evidence that Moore's ADA retaliation claim is within the scope of her charge of discrimination. (AHI App., 68). Second, AHI claims Moore cannot make a prima facie case of retaliation under the ADA and submitted as summary judgment evidence Moore's testimony that she has no evidence her alleged disability played a role in her termination. (*Id*. at 30). Moore's summary judgment response makes no argument and offers no evidence in support of her retaliation claim with respect to either the scope of her EEOC charge or her prima facie case. In the absence of any argument or evidence from Moore as to this claim, the Court declines to sift through the record in search of evidence to support her ADA retaliation claim. Additionally, as explained below, Moore's ADA retaliation claim fails because AHI has articulated a legitimate, non-discriminatory reason for Moore's termination.

to file a response brief and any additional evidence on the issue, to which Moore responded. (ECF 45). In that response, Moore abandoned all but her ADA discrimination claim, which fails for the reasons discussed below. Thus, the Court finds it unnecessary to engage in the exhaustion of administrative remedies analysis.

### B. Discriminatory discharge claim under the ADA

AHI argues Moore's ADA claim fails because Moore cannot establish a prima facie case of discrimination under the ADA. (ECF 32 at 19–24). Even if she could, AHI claims it articulated a legitimate, non-discriminatory reason for terminating Moore, which Moore cannot establish is pretextual. (*Id.*).

"Claims of discrimination based on circumstantial evidence, such as here, are subject to the *McDonnell Douglas* burden-shifting framework." *Vess v. MTD Consumer Grp., Inc.*, 755 F. App'x 404, 407 (5th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To survive a summary judgment motion under this framework:

> The plaintiff must first demonstrate a prima facie case, and then the burden of production[3] shifts to the defendant to proffer a legitimate, non[-]discriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate non[-]discriminatory reason is a pretext for discrimination.

*Id.* (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against

---

[3] The defendant's "burden is one of production, not proof, and involves no credibility assessments." *Carrizal v. Quality Edge, Inc.*, No. 3:17-CV-2813-D, 2019 WL 1077350, at *4 (N.D. Tex. Mar. 7, 2019) (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003)); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

the plaintiff remains with plaintiff at all times. *Carrizal*, No. 3:17-CV-2813-D, 2019 WL 1077350, at *4.

To establish a prima facie case of discrimination under the ADA, Moore must show that (1) she had a disability, (2) she was qualified for the job, and (3) there was a causal connection between an adverse employment action and her disability. *Id.* at *4; *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is regarded as disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). A plaintiff can establish that she is "qualified" by showing that "either (1) [she] could perform the essential functions of the job in spite of [her] disability," or "(2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697.

      **i.    Prima facie case**

AHI met its initial burden to show an absence of evidence with respect to Moore's ADA discrimination claim. AHI provided Moore's deposition testimony in which Moore stated she has no evidence to support her claim she was discriminated against based on a disability. (AHI App., 30). In response, Moore argues that AHI "does not dispute that Moore was disabled or regarded as disabled, [or] that she was qualified for the job despite her disability." (ECF 38 at 8).

8

The Court disagrees that Moore was not required to provide evidence that she was disabled or regarded as disabled, or that she was qualified for the job despite her disability.

"A movant's burden is to point out the absence of evidence supporting the nonmovant's case." *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). AHI listed the elements of a prima facie case, which included the requisite showing that plaintiff is a member of a protected class, and stated, "Plaintiff cannot establish a prima facie case that she was subject to an adverse employment action or discriminated against because of her age, gender, or disability. She has no evidence of any kind." (ECF 32 at 21).[4] "To survive summary judgment, [Moore] must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of [her] cause of action." *See id*.

With respect to the first element of her prima facie case, Moore's Amended Complaint (ECF 23) does not clearly state what her disability is, nor does her response (ECF 37, 38). The last page of Moore's response brief states she has gastrointestinal problems that require her to have "ready access to a restroom." (ECF 18 at 15; Moore App., 7). This is some evidence of a physical impairment, gastrointestinal problems, that substantially limits a major life activity, functions of the bowel. *See* 42 U.S.C. § 12102(2)(B) ("a major life activity also includes the operation of a major bodily function, including… functions of the…bowel."). However, Moore presented no evidence that her alleged impairment (gastrointestinal problems) and resulting limitation (limited bowel function) existed at the time of her termination. *See Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 652–53 (E.D. Tex. 2007) (a plaintiff's disability is evaluated at the time of the alleged discriminatory act). Nor did she present evidence that AHI regarded her as having

---

[4] *See Malacara*, 353 F.3d at 404 ("[Defendant's] motion for summary judgment did put [plaintiff] on notice that he needed to point to or submit evidence as to each element of the fraud cause of action. The motion listed the six elements of a fraud cause of action under Texas law and argued that [defendant] was entitled to summary judgment '[b]ecause Plaintiffs cannot prove any of these elements much less all of them.' ").

gastrointestinal problems or limited bowel function resulting from such problems at the time of her termination. To the contrary, Moore provided evidence that she was released to return to work full time on September 8, 2015. (Moore App., 30).

With respect to the second element of her prima facie case, Moore argues and offered her deposition testimony to show that she could work if provided a reasonable accommodation (ready access to a restroom) and if she had a "very understanding workplace" with many bathrooms. (ECF 38 at 18; Moore App., 7). It is unclear whether Moore argues she needed this accommodation at the time of her termination. To the extent Moore argues she could perform the essential functions of the job of client technology specialist with a reasonable accommodation (ready access to a restroom), there is no evidence to support this argument other than Moore's conclusory statements. (ECF 38 at 18; Moore App., 7). The evidence shows that Renz believed Moore was capable of managing the AMS help desk, and Richards hoped Moore would be capable of doing so. (AHI App., 48; Moore App., 50). However, this testimony does not speak to Moore's qualifications for the position of client technology specialist, the position she held at the time of her surgery and from which she was fired. Even if she did not require an accommodation, Moore has cited no evidence showing she was qualified for the job of client technology specialist at the time of her discharge despite her alleged disability.

With respect to the third element of her prima facie case—causal connection between her termination and her disability—Moore claims the decision to fire her was abruptly made after the onset of her disability. (ECF 38 at 9). It is particularly difficult to determine whether a causal connection exists between Moore's termination and her alleged disability because Moore does not identify her disability, or explain how AHI knew about it. This is significant because, while the Court acknowledges Moore's position that her disability is undisputed, a causal connection

between Moore's alleged disability and her termination cannot exist if AHI was unaware of the disability when it terminated her. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 163–64 (5th Cir. 1996). The record shows AHI knew Moore had emergency surgery to repair a ruptured colon on March 30, 2015 and subsequently requested extended leave for a "partial colostomy and depression," which she was given. (AHI App., 21, 46.1, 55.2). It is reasonable to infer that based on her request for extended leave, AHI was on notice that Moore was experiencing difficulties after her surgery. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444–45 (5th Cir. 2017).

However, the Fifth Circuit has held this is not enough to show knowledge of a disability. *See id*. A jury must be able to infer that AHI knew of a limitation that resulted from an impairment. *See id*. The evidence is insufficient to show that AHI knew on September 1, 2015 that Moore had an impairment that resulted in a workplace limitation. Further, nothing in the record indicates that after receiving Moore's return to work notice, AHI nevertheless regarded her as disabled. Without some evidence that AHI knew Moore was disabled or regarded her as such on September 1, 2015, Moore cannot avoid summary judgment.

### ii. Legitimate, non-discriminatory reason

Even assuming Moore raised an issue of material fact with respect to her prima facie case, AHI met its burden to show a legitimate, non-discriminatory reason for terminating her. AHI provided evidence that the software packages Moore supported did not justify a full-time position as of August 2015 because other employees absorbed those responsibilities, which eliminated her position. (AHI App., 11, 13, 22, 45, 47, 71). Moore claims AHI's reason is pretext for discrimination because on its face the reason shows Moore's job duties still existed and warranted a full-time position. (ECF 38 at 14–15). As further proof that her job was not eliminated, Moore claims AHI later advertised and sought applicants for an identical position.

(*Id*. at 15). Moore offers a job posting from 2018 that she claims is "indistinguishable" from her former position of client technology specialist. (Moore App., 112–14).

"[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 342 (5th Cir. 2014) (quoting *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012)); *see Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 321–22 (5th Cir. 2016). The jobs' descriptions do not support Moore's conclusion that the job advertised in 2018 is the same as the job she formerly held in 2015. *See Creaghe v. Albemarle Corp.*, 98 F. App'x 972, 976 (5th Cir. 2004) (subsequent advertisement for a different position with different job requirements did not show pretext); *see also Bleiweiss v. Panduit Sales Corp.*, No. CIV.A. H-13-0080, 2015 WL 163819, at *18 (S.D. Tex. Jan. 13, 2015) (plaintiff's argument that position was not eliminated and employer merely changed the title and advertised for the position failed where plaintiff did not show the advertised position entailed the same duties as plaintiff's former position).

Moore was a client technology specialist, but the advertisement is for a field support technician. (Moore App., 112–14). The responsibilities and required education in the two descriptions are different. (*Id*.). The most obvious difference is that a field support technician must be able to "travel 50-60% of the time, including some overnight travel" and must be able to "move up to 60 lbs" and "climb on roof tops and mount antennas." (*Id*. at, 114). Moore does not dispute these qualifications and acknowledges in her response that "frequent travel and setting up hardware" are requirements of the field support technician job. (ECF 38 at 15). The advertised position is not evidence Moore's former duties warrant a full-time position, such that AHI's claim to the contrary is false, because the advertised position includes

additional duties. Further, Moore does not explain why a reasonable jury could find the advertisement constitutes evidence of pretext *for discrimination*.

To the extent Moore argues AHI discriminated against her because it needed a field support technician, but did not offer Moore the position, Moore has not shown she was qualified. A field support technician must be able to "travel 50-60% of the time, including some overnight travel," and also be able to "move up to 60 lbs" and "climb on roof tops and mount antennas." (Moore App., 114). Moore testified she could only work if she had a reasonable accommodation of ready access to a restroom due to her gastrointestinal problems, but she does not explain how this accommodation would allow her to travel or climb ladders and work on a rooftop while in the field. (*Id*. at 7). Further, Moore does not claim this position was vacant when she was terminated, that she requested to be transferred to this position, or that she applied for this position in 2018. Evidence that AHI advertised for a position with different job requirements almost three years after Moore was terminated, and for which Moore has not shown she is qualified, is not evidence of pretext.

Moore next claims AHI terminated her based on her disability because AHI trained her to support the AMS software, but refused to allow Moore to manage the AMS help desk when she returned to work, despite AHI's "significant need" for AMS software support. (ECF 38 at 14). This argument also fails. "[A]n employer is not required to create a new job type to accommodate a disabled employee." *Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 725 (5th Cir. 2011) (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)). "For reassignment to be a reasonable accommodation, a position 'must first exist and be vacant.' " *Id*. (citing *Burch*, 174 F.3d at 621). The evidence shows the AMS help desk position was never created and does not exist to this day. (AHI App., 47–48). Moore offers no argument or

13

evidence to overcome AHI's legitimate, non-discriminatory reason for not creating the position—the position would be redundant because field support technicians can support the software. *Id.*; *see Burch*, 174 F.3d 615, 621–22.

Because Moore failed to meet her summary judgment burden as to the essential elements of her ADA discrimination claim, the Court declines to analyze AHI's motion for summary judgment on Moore's claim for lost wages.

## V. RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that AHI's Motion for Summary Judgment (ECF 31) be GRANTED.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 21, 2019.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district

court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).